Good morning and may it please the Court. Jeffrey Thomas representing the appellant Idelfonso Tapia-Rodriguez. The issue in this case concerns the interrogation prong of the Miranda Rule and whether the questions posed to my client, do you live here, how long have you lived here, which bedroom is yours, whether those questions constituted interrogation under the Miranda Rule. The District Court held that none of those questions constituted interrogation and important to understanding why the District Court made a mistake in that is the surrounding facts that led up to those questions. And for me the most essential fact is the Randolph factor. You don't address that very well and the District Court did address it and to me if you can't explain away the reason why Randolph didn't make this, if not routine, at least required questioning, then I don't think you can prevail. Judge Loken, I think I still can. I agree with you that consent, authority to consent always matters, but we've cited cases in our brief that say that while consent, authority consent is always at issue, Miranda still applies and if it's a question that's directly relevant to the substantive offense and reasonably likely to incriminate. I don't think we have any authority for that. It has some logic to it, but they could not complete a search without knowing the extent of where to search, without knowing the parameter, the authority given to them by the consent of who was it Castro? Mr. Rodolfo. Rodolfo. Right. We do have a situation here where there was two roommates, two bedrooms. Let me just, if Rodolfo, apparently he tried to describe by compass, my bedroom's northeast or something. And so they look around and they don't do any questioning of your client and they look around and they, well that looks like the northeast bedroom to us so we'll go in there. And in fact, it was Mr. Rodriguez's bedroom and there's evidence of crime in plain view. We'd, I mean, you know, there'd be a suppression argument endless on the violation of his rights under Randolph. So they either have to, from your view, be quiet so the only option then is to get a warrant, which will leave your client detained for how many hours, who knows, or to ask a question to clarify the scope of the consensual authority they have. And when he identifies, first of all, is there any part of the premises that he would have a co-occupant claim to? And if there is, then request his consent. I can't imagine more practical police work. I would agree and I would understand why the police would not want to put themselves in the position of later trying to fall back on apparent authority or some argument like that. But Judge Loken, they can explore consent and authority to consent, but if those statements are going to be used against the defendant, not just to shore up authority to consent, but to go to the elements of the offense, yes, they can. What statement? I mean, other than that's my room. But they can warn him and it's our position that they have to warn him under Miranda because of the significance of those kinds of statements. You don't have a post-Randolph case to that effect? I don't, but I have the... Of course, if Rodolfo is there, then there's another way to solve it, but he's not there. Oh, Judge, actually, Rodolfo was there. He was there. And they could have asked Mr. Rodolfo... Which is his room. Yes. Whatever room Rodolfo indicates. And the next question is to Rodriguez. Will you consent to us going in that room? Absolutely. And they don't have to warn to do that? No, sir, they would not have had to ask. So doesn't that show this is a pretty hyper-technical... I don't think so, because in a drug case like this one, it all comes down to mere presence versus complicity, mere presence versus constructive possession. And when you are asking unwarned questions of a suspect, tying them to that residence, that is a big deal. There is a pound of methamphetamine in plain view in that kitchen. And so if you want to... If the police want to shore up their authority to consent, they better give a Miranda warning first, because answering... My client answering those questions, he is tying himself to that pound of methamphetamine in the kitchen. He's identifying himself as the roommate with drug ties. And so I think that the mistake of the district court here was not recognizing the significance of those questions in the context of an active drug investigation in a house where there is a pound of methamphetamine in plain view and an unidentified drug-connected roommate. And that had come directly from Rodolfo, correct? Yes. That was somebody living in the house also who also was trafficking in drugs. Yes, but before Sergeant Heath got there, he knew there was more drugs, more money at that house. He knew there was a roommate. And so asking unworn questions about, do you live here? That's tantamount to, are you the roommate? What are your ties to these drugs? So while I agree, Judge Loken, that authority to consent matters, these questions have great significance apart from just authority to consent. And therefore, if the police are going to ask those questions, it's going to have to be preceded by a Miranda warning. Even if they ask, do you live here, since he's there? Well, I think even the law... Next question, are you the roommate? Or maybe it's either or. Do you live here or are you his roommate? Where do you live can certainly be, in a whole lot of contexts, a routine matter. But the law recognizes that there is a line between the routine and the reasonably likely to incriminate, which is all contextual and factually dependent. And on these facts, with the drugs in the house, the unknown drug-connected roommate, these questions cross that line. Now, the other mistake I think that the district court made here, to briefly touch on that, was expanding this court's holding in the Fleck case. The district court, I think, made a mistake here. Fleck doesn't mention the Randolph kind of cases and consent-ish kind of cases, does it? Do you think it does on the fairly short discussion? It really doesn't. But I think that the important part of Fleck is that... Excuse me, Judge Beam was clear in footnote number two that the holding was being limited to the specific facts of that case. And the reason that the question about, do you have the key, the reason that wasn't interrogation was not because all general authority to consent questions are free game. It was held not to be interrogation because control over the entire residence had already been admitted by both parties. So I would submit that the district court simply erred in both classifying these questions as merely biographical and made a mistake in extending the Fleck decision to create a broader exception than what Fleck actually states. And with that, I'd reserve my few remaining seconds. Good morning, Your Honors. May it please the Court. Thomas J. Kane, Jopain, on behalf of the United States. I submit to the Court that one has to review the facts of this case to determine whether or not Heath's three main questions, pre-Miranda, rose to the level of interrogation. Heath arrested the co-defendant. He was in possession of narcotics. The co-defendant was Mirandized. He admitted to his involvement in narcotics. More importantly, he told officers that he had more drugs back at his residence. He also told the officers where they could find those drugs, on top of the microwave. All of which makes this look more like interrogation. I'm sorry? All of which makes this look more like interrogation. Well, when they're questioning Rodolfo, it was interrogation, but Rodolfo is a co-defendant. They want consent to search the entire premises so they don't have to get a warrant because they're pretty sure there's already a pound they've found and where's the rest? Well, he was interrogated. He read his Miranda rights and he did freely and consensually give consent to search his apartment. Again, he told officers, I've got drugs there. They're on top of the microwave. Are you talking about Rodolfo or Rodriguez? This is Rodolfo, the co-defendant who was arrested first. But what's at issue is the questions to Rodriguez. Agreed, but you have to take it in... The preamble makes it... Of course it was investigative. Of course it was intended to ferret out evidence of crime. I mean, that goes without saying, really, in this situation. And based on what they knew, they knew there was a co-defendant that was likely going to be present and they would have to get his consent to do a full search of a second bedroom. And that's when they encountered the defendant, Rodriguez. And they knew they had permission to... Why didn't they just ask Rodolfo, which is his bedroom? That I cannot answer. Why doesn't that make a difference? They asked him again because they had to determine who could give lawful consent They asked the person that was there. I thought the whole scenario was find out if he has a bedroom or if he does, which it is and then see if he'll consent because that's what Randolph requires. Correct, and that's what the... In hindsight, the safe way to do that to avoid this issue is to ask Rodolfo, does he have a bedroom? And then they still... Rodolfo says, yes, it's that one up there. They still would have... Okay, now you go to Rodriguez will you consent that we go in that bedroom? He says no, and you get a warrant. And that's what... They just bypassed Rodolfo and they went directly to the defendant and asked him is that your bedroom? I know, and is that constitutionally significant? Well, I don't believe that because of the law, the precedent it doesn't require that it doesn't rise to the level of interrogation. The drugs that were seen in plain sight were claimed by the co-defendant, Rodolfo. Mr. Rodriguez saying admitting what bedroom is his doesn't implicate him in any crime. But doesn't at that point the officers have the information from Rodolfo that a roommate is also trafficking in drugs? But he didn't explain in what capacity. He couldn't give any details. I'm guessing that the law enforcement would want to follow up on that. And I'm sure they would have and they did as a matter of fact after the case, but at the time they were just going... But I guess I'm thinking of what's in the officers' heads when they go into this home. They have information that the person that they've just encountered is the roommate with a room here where there may be drugs. And they certainly suspected that he had drugs there and they certainly want to search it. So why aren't those questions different? One, which one is your room directly links Mr. Tapia Rodriguez to that room? Now, you could separately sort of a consent based on other information is a separate question, but why is that not a question that's seeking incriminating information and linking him directly to a place that law enforcement really suspects may have some drugs? Again, the codefendant claimed the drugs and told the officers where they could be found. Rodriguez's admission to him being in his bedroom didn't connect him to the drugs that were found on the microwave that was claimed by the codefendant. I submit that him claiming that, yes, that's my bedroom that no more implicated him in any crime than simply him being present in the living room. Yes, he was in the presence of drugs. Was he trafficking them? We have no information his admission did not implicate him in trafficking. And again, officers... The amount of drugs can indicate trafficking, right? The amount of drugs can indicate trafficking, right? Several cases say that. The size, the quantity. Most certainly a pound and it was in different quantities. So therefore when you just talk about something that's in a room it can mean trafficking, almost like snapping your fingers. Could be if no one else claimed that those drugs were his. Again, they were solely focused on Rodriguez's room. They wanted to get in there, no doubt about it. And for them to lawfully get in there they're trying to get voluntary consent. And the reason they wanted to go in there is because they suspected there would be drugs in there. No doubt about it. So when they asked Mr. Vera Rodriguez that's your room, that linked him up. I don't see how that's... Maybe you've got another reason for the question but I'm not sure how that doesn't link him to potential... It linked him I say it didn't implicate him in a crime until they found the drugs. The case law is pretty clear that if you ask a question that turns out to later be incriminating it's what the officers know at the time they're asking the questions. Had they seen drugs in his room and then asked him, is that your room? That's different. That would most certainly implicate him in the crime of possession with intent had the officers known that there was going to be drugs in there. Well the district court I think articulated the response to this by characterizing the questions in this context as related to the administrative purpose of getting effective consent. Of course administrative purpose, that sort of magic words for avoiding in custody Miranda requirement is there any case law support that administrative purpose usually means booking and that sort of, those sorts of questions. Are there cases that would support the district court's expansion if you will of that concept situation? I submit there are similar circumstances in the Flett case they're searching that and Randolph and Munez all cases where officers are just trying to get legal authority, that's what they're trying to do. Isn't though the Flett case just so guarded and restricted because it says in the critical part even if we were to conclude the question was interrogation, they'd still already given consent and this is a fruit of the poisonous tree case and the footnote too we're going to restrict this to whatever facts we find. Doesn't Flett come down to saying nothing about your issue? About my issue, the defense wants to suppress his statements claiming ownership of the room. I submit his mere presence implicates him as much as his statement that yes, that's my room and more importantly the defendant saying he's involved that would come in had this case gone to trial. I think the end result would have been the same but more importantly I don't believe because of the officer's three questions on how they're trying to go about properly getting voluntary consent that we should make an exception in the law that if it may lead to incriminating evidence then that rises to the level of interrogation. The law as it stands now is what's reasonably likely. Again, I submit that they had no idea what was in the room yes, they suspected but they weren't certain and because they weren't certain what was found in there, there was nothing wrong with their three questions that they posed to the defendant. Again, because they believed in their time, they had to get the lawful authority to get in that room in the first place and that's the only reason for them asking those questions. So with that if there's no more questions for me I submit the matter. Thank you. Thank you. Mr. Thomas I see we've got a minute here. Yes sir. The government here doesn't cite any other case to support their argument other than Fleck and Fleck was decided what, 15 years ago and I think they're expanding Fleck just simply beyond Fleck's very clear cabining of the significance of the polling. I think that the alternatives available to the police here were either if they wanted to nail down the authority to consent issue, their alternatives were either ask Mr. Rodolfo or pull out their Miranda card because questions of contacts with this residence are critical. I think the government here is drawing a myopic view of drug cases. Why didn't Rodriguez's subsequent consent purge the Miranda violation? I don't think Judge Loken that you can unring that bell or purge that taint given the purged a lot of taints. And Fleck is about a taint. It was about a taint because the fact of authority to consent had already been admitted which in this case it wasn't. In Fleck they were admitting they were repeating an admission whereas here my client had made no prior statements and so is on that basis to be distinguished from Fleck. Thank you counsel.